### THE BRITANNIA.

#### HILLS BROS. CO. v. THE BRITANNIA.

(District Court, E. D. New York. May 17, 1898.)

CARRIAGE BY SEA—BILL OF LADING—LIBEL IN REM.

The agent at Barcelona of the owners of the B. contracted to carry goods from there to New York via Marseilles. The bill of lading provided for the carriage of the goods by the B., or, at the carrier's option, by another ship. It recited the name of the captain of the B., but the signature thereto was illegible, and bore no satisfactory resemblance to his name. The B. was not at Barcelona at that time nor thereafter. The goods were carried by another vessel, which sailed from Marseilles 19 days after the B. sailed from that port. *Held*, that a libel in rem for damages from the delay would not lie against the B., even in favor of a bona fide purchaser of the bill of lading, as there was nothing on its face to indicate, to one exercising care, that it was signed by her captain.

This was a libel in rem by the Hills Bros. Company against the steamship Britannia to recover damages for delay in shipping goods.

David F. Butcher, for libelant.

Benedict & Benedict, for claimant.

THOMAS, District Judge. The claimant's agent at Barcelona, Spain, contracted to carry certain almonds from Barcelona to New York, via Marseilles, France. The bill of lading, dated October 28, 1895, provides that the carriage should be performed by the ship Britannia, or, at the option of the carrier, by another ship. At this time the Britannia was not at Barcelona, and, although her captain's name is recited in the bill of lading, yet the name signed to such bill, in behalf of the carrier, is not proved to be his name, nor does an inspection of it cause such fact to appear. The goods were not carried by the Britannia, which sailed November 9, 1895, from Marseilles to New York, but by the Patria, which sailed from Marseilles 19 days later; and for this delay the libelants claim damages in an action in rem against the Britannia.

It may be inquired at the outstart whether the Britannia undertook, actually or constructively, the carriage of the goods. If not, an action in rem against her will not lie.

The Britannia was not at Barcelona at the date the bill of lading was executed. The bill of lading did not contemplate that the goods should be shipped on board the Britannia at Barcelona. There is no evidence that the Britannia was ever at Barcelona thereafter; that she ever was at Marseilles while the goods were there; nor that her captain signed the bill of lading. The ingenious argument of the advocate for the libelant does not meet these deficiencies.

The court is asked to assume that the somewhat obscure signature to the bill of lading was that of the captain of the Britannia. While the court may not decipher the signature, it bears no satisfactory resemblance to the name of the captain of the Britannia; and as he was not at Barcelona at the time, and as it does not appear that he was thereafter at that port, there is not the slightest reason for holding that he signed the bill of lading, as there is no extrinsic evidence of such alleged fact.

It is urged that the claimant is estopped by the bill of lading as against a bona fide holder. If the captain of the Britannia, having the real or apparent power to sign the bill of lading, did so, and thereby represented that he had received the goods, although the same were not in fact delivered to him, the question might arise whether the carrier could be estopped to deny the fact as against a bona fide purchaser of the bill, who had been damaged thereby. But such doctrine may not be invoked in this case, because a proposed purchaser of the present bill of lading would find nothing in it to induce him to believe that the captain of the Britannia had received the goods, or undertaken the carriage thereof, except that the bill recited his name, and stated that the Britannia was to carry the goods. But, had such a purchaser used requisite care, he would have received notice from the same bill that the captain of the Britannia apparently did not sign the bill, and, moreover, that the bill contemplated that the goods might be carried by some other ship, if the carrier preferred. There would be no evidence present to such proposed purchaser that the Britannia was bound by any act of its captain, denoting that he had, actually or constructively, received the goods, or had committed his ship to the carriage. Therefore no one could purchase the bill, relying either upon such fact or representation of such fact. Hence all the elements of an estoppel are absent, and the purchaser stands in precisely the same relation to the bill as the original holder thereof. In such a state of facts the action in rem against the Britannia must fail, and, in view of that fact, it is unnecessary to inquire whether the carrier is exempt from liability under the sixth article of the bill of lading. It results from the foregoing views that a decree should be entered dismissing the libel, with costs to the claimant.